Thomas E. Patterson (*pro hac vice*)
Robert J. Pfister
David M. Guess
Julian I. Gurule (*pro hac vice*)
**KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Tel.:    (310) 407-4000

*Attorneys for Netflix, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY MEDIA, LLC, *et al.*,[1] | Case No. 18-11358 (MEW) |
| Debtors. | Jointly Administered |
| NETFLIX, INC., | Adv. Proc. No. 18-01552 (MEW) |
| Plaintiff, | |
| v. | |
| RELATIVITY MEDIA, LLC and RML DISTRIBUTION DOMESTIC, LLC, | **AMENDED ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT** |
| Defendants. | |

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth (a) in the *Order (A) Authorizing the Joint Administration of Their Chapter 11 Cases and (B) Waiving Requirements of Section 342(c)(1) of the Bankruptcy Code and Bankruptcy Rule 2002(n)* [Bankr. Dkt. No. 5] and (b) at www.cases.primeclerk.com/relativity.  The location of Relativity Media, LLC's corporate headquarters and the Debtors' service address is: 9242 Beverly Blvd #300, Beverly Hills, CA 90210.

Netflix, Inc. ("Netflix" or "Plaintiff"), as and for its *Amended Adversary Complaint for Declaratory Judgment* (this "Complaint") against Debtors Relativity Media, LLC and RML Distribution Domestic, LLC (collectively, "Relativity" or "Defendants"), respectfully states as follows:

**INTRODUCTION**

1.  Netflix brings this Complaint in order to secure a binding determination of Relativity's liability for breaches under that certain License Agreement for Internet Transmission, dated as of June 1, 2010 (as amended by Amendment No. 1 to License Agreement for Internet Transmission, dated as of November 1, 2010, Amendment No. 2 to License Agreement for Internet Transmission, dated as of August 31, 2011, and Amendment No. 3 to License Agreement for Internet Transmission, dated as of October 20, 2011, the "License Agreement"). A true and correct copy of the License Agreement, including all schedules and amendments thereto, in redacted form, is attached to the Complaint as **Exhibit A** and is incorporated by reference as if fully set forth herein. The redactions do not include portions that are pertinent to the issues raised by this Complaint, but are to abide by the confidentiality obligations set forth in the License Agreement. Capitalized terms used but not defined in this Complaint have the meanings set forth in the License Agreement.

2.  The License Agreement is a multi-year output contract that required Relativity to grant an exclusive license for streaming video on demand ("SVOD") to Netflix for exhibition on Netflix's SVOD service within the United States, including its territories, commonwealths, and possessions. Debtor Relativity Media, LLC assigned the License Agreement to Debtor RML Distribution Domestic, LLC, but continued to remain liable thereunder.

3. Netflix and Relativity are also parties to a second contract, also referred to as that certain License Agreement for Internet Transmission, but dated as of June 24, 2011, and governing SVOD in Mexico, Central America, South America and the Caribbean Basin Islands (the "Latin American License Agreement"). The Latin American License Agreement also provides Netflix with an exclusive license to exhibit the Titles during the Term (both as defined therein) on an SVOD basis using Netflix's SVOD service.

4. Netflix brings this Complaint because Relativity has filed motions for authority to sell substantially all of its assets and to assume and assign the License Agreement, the Latin American License Agreement, and its other contracts with Netflix.[2] A determination of existing breaches of the License Agreement and of the proper quantum of damages for those breaches, as described below, are necessary prerequisites for the assumption of those agreements. Further, pending the assumption of the License Agreement and/or the Latin American License Agreement or if the sale is not consummated, Netflix also brings this Complaint to determine to what extent Netflix has the right to setoff against amounts it may otherwise owe to Relativity, if any, for license fees under the License Agreement and/or the Latin American License Agreement pursuant to section 553 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and applicable non-bankruptcy law. Following entry of judgment on the Complaint in favor of Netflix, if the License Agreement and/or the Latin American License Agreement has not yet been assigned or the sale has not yet been consummated, Netflix

---

[2] *See Debtors' Motion for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Entry Into the Asset Purchase Agreement for the Sale of Substantially All Their Assets, (B) the Sale of Substantially All the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances (Other than Assumed Liabilities) Pursuant to Section 363 of the Bankruptcy Code and (C) the Assumption and Assignment of Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code, and (II) Granting Related Relief* [Bankr. Dkt. No. 77]; *Debtors' Motion Pursuant to 11 U.S.C. §§ 101 and 365 and Fed. R. Bankr. P. 6006 for Entry of an Order Approving Assumption of Executory Contracts with Netflix, Inc.* [Bankr. Dkt. No. 213].

intends to file a motion for relief from the automatic stay to effect a setoff of mutual claims under the License Agreement and/or the Latin American License Agreement.

5. Relativity disputes that it has breached the License Agreement and the quantum of damages for its asserted breaches. The controversy between Netflix and Relativity concerning Relativity's breaches of the License Agreement and the quantum of damages for those breaches is genuine, definite, concrete, real, and immediate. The outcome of the dispute will bear on, *inter alia*, the amount, if anything, that Relativity must pay to Netflix to cure its defaults under the License Agreement as a precondition to the assumption and assignment of the License Agreement, to the extent this Court determines that is otherwise permitted.

6. The Complaint is the proper procedural vehicle for determining this dispute under *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993), which requires that substantive legal disputes under executory contracts that the debtor seeks to assume be adjudicated by way of an adversary proceeding. *Id.* at 1098-99. Adjudication by way of the Complaint is also compatible with Relativity's sale process, as Relativity's asset purchase agreement contemplates a post-closing designation rights process for the assumption and assignment of executory contracts. *See* Asset Purchase Agreement among Relativity Media, LLC, the Other Sellers Named Therein, and UltraV Holdings LLC, dated as of May 17, 2018 [Bankr. Dkt. No. 77-2], § 2.7(c)-(d).

7. The filing and prosecution of the Complaint is permitted under section 362 of the Bankruptcy Code because it is commenced in this Court in connection with the Bankruptcy Case. *See, e.g., In re Atreus Enters., Ltd.*, 120 B.R. 341, 346 (Bankr. S.D.N.Y. 1990).

## JURISDICTION AND VENUE

8. Plaintiff is a counterparty to contracts with at least two of the Debtors in the jointly administered chapter 11 cases styled *In re Relativity Media, LLC*, *et al.*, Case No. 18-11358 (MEW) (Bankr. S.D.N.Y.) (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Defendants are debtors and debtors in possession in the Bankruptcy Case.

9. This Court has jurisdiction over the Bankruptcy Case, this Complaint, and Defendants pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(9). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10. Plaintiff consents to the entry of final orders and judgments by this Court with respect to the declarations that it seeks under this Complaint.

## THE PARTIES AND THEIR DISPUTE

11. Relativity's licenses of Titles to Netflix for exhibition on its SVOD service are exclusive licenses. Relativity may not license those same Titles to other entities, such as Amazon or Starz, for exhibition on their SVOD services at any time prior to the end of a Title's second Availability Period (Section 4.3); in other words, not before the commencement of Netflix's Availability Periods, not during either of its Availability Periods, and not between its Availability Periods. In early April 2018, Netflix learned that five Titles that it licensed from Relativity under the License Agreement for SVOD on an exclusive basis were being exhibited

4

by competitors of Netflix, including Amazon and Starz, on their SVOD services prior to the end of Netflix's second Availability Periods for those Titles.

12. The License Agreement generally provides for Netflix to exhibit a Title on its SVOD service during two periods, referred to as Availability Periods: the first for a period of eighteen consecutive months, and the second for a period of twelve consecutive months. The License Agreement also specifies that the first Availability Period may be no later than the occurrence of certain events (Section 4.4.2), and that Relativity must provide Netflix notice of designation of a Title for license to Netflix "in no event later than one hundred twenty (120) calendar days prior to the first Start Date" (Section 4.4.3). The Start Date for the second Availability Period may be selected by Relativity in its discretion, but may be no later than the sixth anniversary following the end of the first Availability Period (Section 4.4.2).

13. Section 4.1.1 of the License Agreement required Relativity to designate for license to Netflix no fewer than 15 Titles whose initial theatrical release occurred in 2017. Despite this, as detailed below, Relativity designated only three Titles for 2017.

14. Faced with these apparent breaches, Netflix sent Relativity its Notice of Breach and Default, dated April 4, 2018 (the "Default Notice"), a true and correct copy of which is attached hereto as **Exhibit B**, in which Netflix asserted that Relativity breached the exclusivity provisions of the License Agreement by permitting the exhibition of five Titles on Amazon and Starz and that Relativity failed to compensate Netflix for its failure to deliver the minimum number of required Titles for 2017.

15. Relativity responded to the Default Notice by letter dated April 25, 2018 (the "April 25 Letter"), a true and correct copy of which is attached hereto as **Exhibit C**, denying that it had authorized the exhibition of Titles licensed to Netflix on other SVOD services and

5

claimed that, had such exhibition taken place, it "would have been as a result of inadvertence on the part of third parties with whom we have a contractual relationship – and not by Relativity."

16. On May 3, 2018, Relativity and certain of its affiliates commenced the Bankruptcy Case by filing petitions seeking relief under chapter 11 of the Bankruptcy Code.

17. Netflix responded to the April 25 Letter by letter dated May 8, 2018 (the "May 8 Letter"), a true and correct copy of which is attached hereto as **Exhibit D**, asking for additional information and documents to substantiate Relativity's assertions in the April 25 Letter.

18. In fact, as Netflix has subsequently learned, Relativity was not being honest or forthright with Netflix in asserting that the exhibition of the five Titles on other SVOD services was "as a result of inadvertence," and had not been honest or forthright with Netflix for months. To the contrary, Relativity had in fact lost its rights to three of the Titles through foreclosure over nine months before it commenced the Bankruptcy Case. The foreclosure resulted in Relativity becoming legally incapable of maintaining Netflix's exclusive licenses. At no time in the over nine months prior to the commencement of the Bankruptcy Case did Relativity disclose the foreclosure to Netflix. Based on Relativity's less-than-forthright response in the April 25 Letter, Relativity did not provide to Netflix notice of the loss of title to reduce the prospect of Netflix taking action to protect itself from Relativity's breaches. *See* Transcript of May 9, 2018 Hearing [Bankr. Dkt. No. 74], at 12:12-25 (Relativity's counsel admitting that the Bankruptcy Case was commenced when it was because "there could be an effort to terminate" the License Agreement, and "we felt that we needed the protection of the automatic stay to prevent an argument relative to a pre-petition termination to preserve the value of one of the crown jewel assets of the estate").

19. On May 21, 2018, Netflix sent an additional letter to Relativity, a true and correct copy of which is attached hereto as **Exhibit E**, asserting additional breaches of the License Agreement based on the loss of title to the three Titles over nine months prior to the commencement of the Bankruptcy Case and consequent loss of Netflix's exclusive licenses.

20. By letters dated May 21, 2018 and May 24, 2018, true and correct copies of which are attached hereto as **Exhibit F** and **Exhibit G** (respectively, the "May 21 Letter" and "May 24 Letter"), Relativity acknowledged the foreclosure of the three Titles over nine months prior to the commencement of the Bankruptcy Case and to the exhibition of five Titles for various periods of time on Amazon and Starz (including with respect to two of the Titles at the direction of Relativity, not "third parties"), but nonetheless asserted that Relativity was not in breach of the License Agreement and had no liability to Netflix whatsoever thereunder. Relativity did not provide any documentation to Netflix in response to its request regarding the foreclosure.

**Breaches Related to the Foreclosure and Third Party Exhibition of Certain Films**

21. In or around April of 2017, Macquarie US Trading LLC and/or Crystal Screens Media Inc. (collectively, "Macquarie") foreclosed on three Titles that Relativity had licensed to Netflix under the License Agreement: (1) *The Lazarus Effect (a/k/a Lazarus)*; (2) *The Woman in Black 2: Angel of Death*; and (3) *Beyond the Lights* (together, the "Foreclosed Titles"). The foreclosure resulted in loss of Relativity's title in these three Titles. Following the foreclosure, Macquarie, through its business agent, entered into an agreement with Amazon, a direct SVOD competitor of Netflix, to exhibit these Titles on SVOD services. As admitted in the May 21 Letter, the Foreclosed Titles were exhibited on Amazon for no less than 20, 16 and 34 days, respectively.

7

22. Macquarie has asserted that, as a result of the foreclosure, it is free to exhibit the Foreclosed Titles on SVOD services other than Netflix's at any time should it choose to do so, including prior to the end of Netflix's second Availability Periods. By letter dated June 13, 2018, Crystal Screens Media Inc. ("CSMI") contends that it is the successor holder of title to the Foreclosed Titles following a foreclosure sale on April 17, 2017 and in such capacity CSMI gratuitously asserted to Netflix that it "will not license the [Foreclosed Titles] to other entities, such as Amazon or Starz, for exhibition on their SVOD services at any time prior to the end of a [Foreclosed Title's] second availability period." CSMI's assertion was not made in response to any request by Netflix and Netflix has no knowledge regarding what prompted the communication from CSMI.

23. Relativity's May 21 Letter further admitted that Relativity had licensed *And So It Goes* to Starz starting on September 18, 2017, approximately five-and-a-half months before Relativity's asserted end of Netflix's twelve-month second Availability Period. It continues to be exhibited on Starz to this day.

24. Finally, Relativity's May 21 Letter admitted that Relativity had licensed *Hector and the Search for Happiness* (and, together with *And So It Goes*, the "Other Titles") to Starz starting on December 3, 2017, during the gap between the first and second Availability Periods. According to Relativity, that Title was taken down from Starz on April 16, 2018, 134 days later.

25. As noted, Section 4.3 of the License Agreement provides that Relativity's licenses of Titles to Netflix for exhibition on its SVOD service are exclusive. Relativity may not license those same Titles to other entities, such as Amazon or Starz, for exhibition on their SVOD services. Netflix would not have entered into the License Agreement or agreed to the rates for

8

the licensed Titles had it understood the Agreement to permit Relativity to enter into licensing agreements with Netflix's competitors prior to the end of the second Availability Period.

26. The License Agreement contains a series of continuing representations, warranties, and covenants by Relativity that assure Netflix that at all material times Relativity has the legal right and power to grant and maintain the exclusive licenses in favor of Netflix. First, Relativity represents, warrants, and covenants that it "shall maintain during the Term all rights, titles, authorizations, consents and interests necessary to grant Netflix the licenses granted in this Agreement…." License Agreement, § 7.2.6.

27. Relativity also represents, warrants, and covenants that "there are no liens, claims, encumbrances, legal proceedings, or agreements with respect to Relativity or the Content that interferes [*sic*] with Netflix's exhibition and distribution thereof in accordance with this Agreement" and that Relativity "has satisfied and shall satisfy during the Term all third party obligations of any kind … with respect to the Content…." *Id.* §§ 7.2.2 & 7.2.7.

28. Finally, the License Agreement contains an ongoing covenant that requires that Relativity "shall maintain sole and exclusive authority to license, exhibit, distribute or otherwise exploit each Title in the Territory to third parties for exhibition and distribution on a Pay TV and an SVOD basis prior to, during, or between such Title's Pay Television Windows and/or Availability Periods…." *Id.* § 7.2.6. "[I]f it does not have such sole and exclusive authority, it has and shall not license or authorize any third party to license, exhibit, distribute, or otherwise exploit a Title available to consumers on a Pay TV and an SVOD basis in the Territory prior to, during, or between such Title's Pay Television Windows and/or Availability Periods…." *Id.*

29. The forward-looking definition of "Title" in the License Agreement makes clear that the foregoing representations, warranties, and covenants cover all Titles that Relativity has

9

licensed to Netflix, and not just any initially-licensed Titles. *See* License Agreement, Schedule A ("'Titles' shall mean any and all (subject to Section 4.1.1) first run, theatrically released feature films that are [among other things] financed, produced, and/or distributed, in whole or in part, by Relativity or an Affiliate … whose first theatrical release in the Territory occurs during the Output Term … and which are designated by Relativity for license to Netflix hereunder.").

30.     Although Relativity had an obligation to inform Netflix of the loss of title to the Foreclosed Titles, it failed to do so until after receiving the Default Notice, and until after the commencement of the Bankruptcy Case. On information and belief, Relativity did not provide notice to Netflix of the loss of title to the Foreclosed Titles out of fear that, once Netflix learned of the foreclosure, it would assert claims against Relativity and cease making payments under the License Agreement. This ongoing failure continued to the commencement of the Bankruptcy Case, and in some respects continued thereafter. In the April 25 Letter, Relativity not only failed to disclose the loss of title and the true basis on which the Foreclosed Titles had been exhibited through Amazon, but affirmatively misrepresented the facts by asserting that: "To the extent that any of the Titles may have appeared on competitors' services during your exclusivity period, it would have been as a result of inadvertence on the part of third parties with whom we have a contractual relationship – and not by Relativity." Exh. C, at 1-2.

31.     Only following the filing of the Bankruptcy Case did Relativity even begin to acknowledge that circumstances had occurred that resulted in it violating the representations, warranties and covenants of the License Agreement, although it still obfuscated and underplayed Relativity's breaches. *See Declaration of Lori Sinanyan in Support of Chapter 11 Petitions, First Day Pleadings and Proposed Sale* [Bankr. Dkt. No. 8], ¶ 30 (referencing the "orderly transition of 3 titles to Macquarie (*Lazarus, Woman in Black 2*, and *Beyond the Lights*)");

10

*Declaration of Colin M. Adams in Support of Chapter 11 Petitions and First Day Pleadings* [Bankr. Dkt. No. 7], ¶ 49 ("Prior to the Petition Date, the Agent foreclosed on the Designated Pictures pursuant to an approximately $9 million credit bid."). (The reference to an "orderly transition" is a highly misleading description of a foreclosure, and "Designated Pictures" was not defined.).

32. At the first day hearing, Relativity continued to give a highly misleading version of its breaches of the License Agreement. Its counsel stated: "[C]ertain films we had slotted with [Netflix] to be exclusively on Netflix had been streamed on other sources at certain times … you know, a film might have inadvertently been streamed for four days on another service by another party who had rights to it. Perhaps we had the distribution rights, but the owner perhaps inadvertently allowed it to be on Amazon for two days." Transcript of May 9, 2018 Hearing [Bankr. Dkt. No. 74], at 24:1-2. Relativity's and its affiliated debtors' schedules of assets and liabilities, signed under penalty of perjury, misleadingly reflect the continued ownership of the copyrights in the Foreclosed Titles. Finally, the foreclosure was not disclosed in response to question 5 of any of Relativity's and its affiliated debtors' statements of financial affairs, also signed under penalty of perjury, which required them to "[l]ist all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, [or] transferred by a deed in lieu of foreclosure…."

33. The License Agreement contains a mechanism for dealing with circumstances where Relativity loses the legal right to grant or maintain an exclusive license in favor of Netflix. Section 4.6 of the License Agreement provides that "Relativity may withdraw any Title if Relativity reasonably believes that Netflix's continued transmission or other exploitation of such Title may subject Relativity and/or Netflix to material legal liability…." Had Relativity been

11

acting in good faith and dealing fairly with Netflix, as the law requires, immediately upon it learning of the foreclosure of the Foreclosed Titles it would have provided, and was under an obligation to provide, notice to Netflix of the withdrawal of the licenses of the Foreclosed Titles.

34. The License Fees for the Foreclosed Titles totaled $24,154,033. As set forth in Sections 4.6 and 9.3 of the License Agreement, the withdrawal, termination, or other interruption of rights granted to Netflix in a particular Title should give rise to a right of refund in an amount calculated on a *pro rata* basis in accordance with the amount of time remaining in the contractual Availability Periods. On information and belief, Relativity breached Sections 7.2.2, 7.2.3, 7.2.6, and 7.2.7 of the License Agreement at a point in time when 40% of the total Availability Periods remained (*i.e.*, 12 months out of a total of 30 months). Thus, Netflix's damages for these breaches is $9,661,613 (*i.e.*, 40% of the License Fees that Netflix paid).

35. License Fees for the Other Titles totaled $7,376,438. The violation of Netflix's exclusive rights in a particular Title should give rise to a right of refund in an amount calculated on a *pro rata* basis in accordance with the amount of time remaining in the contractual Availability Periods. On information and belief, Relativity breached Section 4.3 of the License Agreement at a point in time when 40% of the total Availability Periods remained (*i.e.*, 12 months out of a total of 30 months). Netflix's damages relating to the Other Titles are $2,950,575 (*i.e.*, 40% of the License Fees that Netflix paid).

36. In addition to the foregoing direct damages, Netflix is entitled to additional damages as a result of Relativity's conduct. Although the License Agreement contains certain limitations of liability for "INDIRECT, INCIDENTAL, SPECIAL, [OR] PUNITIVE … DAMAGES … ARISING OUT OF OR RELATED TO THIS AGREEMENT," they do not apply to "ANY DAMAGES RESULTING FROM … (B) THE INTENTIONAL

MISCONDUCT OR GROSS NEGLIGENCE OF EITHER PARTY OR ITS PERSONNEL…."
License Agreement, § 7.6.

37. As noted, Relativity had a duty to promptly inform Netflix of its loss of title in the Foreclosed Titles and its becoming legally incapable of maintaining Netflix's exclusive licenses of the Foreclosed Titles. On information and belief, Relativity determined not to fulfill this duty and, accordingly, has liability to Netflix for indirect, incidental, special, and/or punitive damages arising from such intentional misconduct.

**Defective Notice of Delivery of Title**

38. On April 30, 2018, Relativity gave notice that August 1, 2018 would be the first Start Date for *Samson*. To validly designate a Title for license to Netflix, Section 4.4.3 requires Relativity to provide a notice of the first Start Date at least 120 days before the Start Date. Instead, the notice was given only 93 days before the Start Date, far less than the required 120 days. Accordingly, Relativity did not validly designate *Samson* and Netflix is under no obligation under the License Agreement to license *Samson*.

**Failure to Provide Minimum Number of Required Titles for 2017**

39. Section 4.1.1 of the License Agreement requires Relativity to designate for license to Netflix no fewer than 15 Titles for calendar year 2017. Despite this, Relativity designated only three Titles for delivery to Netflix that were theatrically released in 2017, all of which were recent Acquisition Titles. Despite prior representations that it had rights to numerous Titles, several of which were released in 2017, Relativity failed to deliver the previously-described Titles.

40. The License Agreement provides Relativity with the option of not designating for license the required minimum number of Titles for a given calendar year, provided that, subject

13

to the "good faith efforts" exception discussed below, Relativity pays Netflix the amounts required by Section 9.2 of the License Agreement.  *See* License Agreement, § 4.2.

41. Section 9.2 of the License Agreement specifies that if Relativity fails to license to Netflix in accordance with the terms of the License Agreement in all material respects the minimum number of Titles specified in Section 4.1.1 of the License Agreement, then Netflix's sole remedy shall be Relativity's payment of $5 million for each Title below the minimum number of Titles required.  Section 9.2 provides a concrete example of how this works:  "[I]f in 2012, which has a minimum Title requirement of eight (8), Relativity licenses only five (5) Titles to Netflix, Relativity shall pay Netflix Fifteen Million United States Dollars (US$15,000,000.00)."  Relativity was required to pay Netflix amounts due and owing under Section 9.2 of the License Agreement "no later than thirty (30) calendar days after the last day of the relevant Year."  For 2017 Titles, the due date was January 30, 2018.

42. Section 9.2 of the License Agreement provides a limited exception to the $5 million per undelivered Title payment obligation "if the aggregate number of feature films financed, produced and/or distributed, in whole or in part, by Relativity or any Affiliate during any Year (specifically excluding for this purpose any movies co-financed by Relativity through a multiple picture equity co-finance arrangement of not less than five (5) feature films) is, despite Relativity's good faith efforts, insufficient to meet the minimum Title requirements for such Year…."

43. As a starting point, as part of the plan confirmation proceedings in its prior chapter 11 cases, Relativity expressly represented to Netflix and this Court that it had a slate of 22 films that it planned to release in 2016, 2017, and 2018, and deliver to Netflix.  The list of 22 films is included with the May 8 Letter.  This list included several films that were already

14

completed (*e.g.*, *Kidnap* and *Solace*). Relativity represented that it believed it would be able to deliver six Titles in 2016, eight Titles in 2017, and eight Titles in 2018. Given these representations, Netflix was fully justified in asking Relativity in the May 8 Letter why Netflix did not receive from Relativity the eight Titles that it was supposed to receive in 2017, or even just one or two more Titles than it received for 2017. Relativity could have offered all of the eight 2017 Titles (and more) to Netflix but did not, even though Relativity knew that Netflix had the resources to acquire and/or finance each of these film projects.

44. Relativity not only has failed to provide documents and information requested by Netflix in the May 8 Letter showing that the "good faith efforts" exception is applicable, in its May 21 Letter Relativity spurned Netflix's requests, and argued that it is Netflix's burden to show that the "good faith efforts" exception does not apply.

45. It may well be that Relativity lacked the resources to make any of the films available to Netflix, but Netflix has every reason to question that unsupported assertion. As noted at the May 30, 2018 hearing in the Bankruptcy Case, for instance, counsel for the U.S. Trustee indicated, among other things, that Relativity's books and records for the last two years are in disarray, that his office has reason to investigate and is presently investigating undisclosed connections with former Relativity CEO Ryan Kavanaugh, and that Relativity has been unresponsive to his office's own requests to Relativity for documents and information made over two weeks prior. Transcript of May 30, 2018 Hearing, at 35:21-37:11. At present, therefore, Netflix and this Court are simply not in a position to take Relativity at its word that it engaged in "good faith efforts," as opposed to still further undisclosed transactions that subverted Netflix's rights under the License Agreement.

46. If Relativity is fully responsive to Netflix's discovery requests and provides documents and testimony showing that it did, in fact, engage in the required "good faith efforts" and could not have provided Netflix with even another one or two 2017 Titles, Netflix will cease further pursuit of its claim under Section 9.2 of the License Agreement. Until that time, however, Netflix has stated a valid claim under that section of the Agreement.

47. Accordingly, pursuant to Section 9.2 of the License Agreement, commencing on January 30, 2018, Relativity owed Netflix $5 million for each Title that it failed to deliver to Netflix for 2017 that Relativity could have, with good faith efforts, delivered.

**Temporary Hold on Payment of License Fees Pending Setoff of Mutual Claims**

48. Following Netflix's discovery of Relativity's material breaches of the License Agreement and the commencement of the Bankruptcy Case, it placed a temporary hold on the payment of license fees periodically coming due and owing under the License Agreement and the Latin American License Agreement, if any, including license fees that come due and owing following the commencement of the Bankruptcy Case, if any. Netflix did so to preserve its right in the future to effect a setoff of license fees it may otherwise owe to Relativity, if any, against its claims against Relativity under the License Agreement, following a determination as to the validity and amount of such claims and Netflix being granted relief from the automatic stay to effect such a setoff. As noted, following entry of judgment on the Complaint in favor of Netflix, if the License Agreement and/or Latin American License Agreement has not yet been assigned or the sale has not yet been consummated, Netflix intends to file a motion for relief from the automatic stay to effect a setoff of mutual claims under the License Agreement, the Latin American License Agreement, and other contracts with Relativity. Netflix seeks a determination that its temporary hold on the payment of license fees periodically coming due

16

and owing under the License Agreement and the Latin American License Agreement, if any, including those that come due and owing post-petition, if any, was and is proper. For the avoidance of doubt, Netflix asserts that, as a result of Relativity's uncured, material breaches of the License Agreement, Netflix was not and is not legally required to pay license fees to Relativity under the License Agreement and the Latin American License Agreement.

### COUNT FOR DECLARATORY RELIEF

49. Plaintiff repeats and re-alleges Paragraphs 1–48, *supra*, as if fully set forth herein.

50. An actual controversy has arisen and exists between Netflix and Relativity regarding the extent of Relativity's breaches under the License Agreement and the quantum of damages for those breaches. Netflix contends that Relativity breached the License Agreement and is liable to Netflix (1) in connection with the Foreclosed Titles and the Other Titles, for a refund in an amount calculated on a *pro rata* basis in accordance with the amount of time remaining in the contractual Availability Periods following the time the breach of the License Agreement occurred, and (2) in connection with the undelivered 2017 Titles, for $5 million for each Title that Relativity failed to deliver to Netflix for 2017 that Relativity could have, with good faith efforts, delivered. Relativity denies that it has breached the License Agreement and that it is liable for any damages. An actual controversy also has arisen and exists between Netflix and Relativity regarding whether Relativity validly and timely delivered notice of the delivery of *Samson*. Relativity contends it did; Netflix contends it did not.

51. The controversies between Netflix and Relativity concerning Relativity's breaches of the License Agreement and the quantum of damages for those breaches and whether Relativity validly and timely delivered notice of the delivery of *Samson* are genuine, definite, concrete, real, and immediate. The outcome of the dispute will bear, *inter alia*, on the amount,

if anything, that Relativity must pay to Netflix to cure its defaults under the License Agreement as a precondition to the assumption and assignment of the License Agreement, to the extent this Court determines that is otherwise permitted.

52. Under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 & 2202, Plaintiff is entitled to a declaratory judgment definitively determining the issues set forth in this Complaint.

## PRAYER

WHEREFORE, Plaintiff prays that this Court enter judgment declaring as follows:

(1) that Relativity has breached the exclusivity provisions set forth in Section 4.3 of the License Agreement as a result of the exhibition of Titles on Amazon and/or Starz;

(2) that Relativity was required to promptly notify Netflix of the loss of title to the Foreclosed Titles and that it intentionally did not do so;

(3) that Relativity lost title to the Foreclosed Titles as a result of the foreclosure;

(4) that, as a result of Relativity's loss of title to the Foreclosed Titles, Relativity became legally incapable of maintaining Netflix's exclusive licenses;

(5) that Netflix is entitled to the *pro rata* amount of the License Fees already paid by Netflix for the Foreclosed Titles and the Other Titles following Netflix's loss of its exclusive license privileges, in the case of the Foreclosed Titles, following the foreclosure, and for the Other Titles, following the exhibition of those titles on competing SVOD services;

(6) that the damages based on the foregoing breaches of the License Agreement are in the amount of $9,661,613 (*i.e.*, 40% of the License Fees that Netflix paid) for the Foreclosed Titles, and $2,950,575 (*i.e.*, 40% of the License Fees that Netflix paid) for the Other Titles.

(7) that Relativity is additionally liable for indirect, incidental, special, and/or punitive damages to Netflix arising from Relativity's intentional misconduct in not giving notice to Netflix of Relativity's loss of title to the Foreclosed Titles;

(8) that the notice of delivery of *Samson* was invalid and Netflix is under no obligation under the License Agreement to license *Samson*;

(9) that Relativity is liable to Netflix for $5 million for each Title that it failed to deliver to Netflix for 2017 that Relativity could have, with good faith efforts, delivered;

(10) that Netflix's temporary hold on the payment of license fees periodically coming due and owing under the License Agreement and the Latin American License Agreement, if any, including those that come due and owing post-petition, if any, was and is proper;

(11)    that, as a result of Relativity's uncured, material breaches of the License Agreement, Netflix was not and is not legally required to pay License Fees to Relativity under the License Agreement, including License Fees that otherwise would come due and owing post-petition; and

(12)    that Netflix be granted such other and further relief as is just and proper.

Dated: June 19, 2018                          *Robert J. Pfister*
                                              Thomas E. Patterson (*pro hac vice*)
                                              Robert J. Pfister
                                              David M. Guess
                                              Julian I. Gurule (*pro hac vice*)
                                              KLEE, TUCHIN, BOGDANOFF & STERN LLP
                                              1999 Avenue of the Stars, 39th Floor
                                              Los Angeles, California 90067
                                              Telephone:    (310) 407-4000
                                              Facsimile:    (310) 407-9090

                                              *Counsel to Netflix, Inc.*