# EXHIBIT A

## (License Agreement)

## LICENSE AGREEMENT FOR INTERNET TRANSMISSION

This License Agreement for Internet Transmission ("Agreement") is entered into as of this 1st day of June, 2010 (the "Effective Date") by and between Netflix, Inc., a Delaware corporation with its principal place of business at 100 Winchester Circle, Los Gatos, CA 95032 ("Netflix") and Relativity Media, LLC, a California limited liability company, with its principal place of business at 8899 Beverly Blvd., Suite 510, West Hollywood, CA 90048 ("Relativity") (Netflix and Relativity are collectively referred to as the "Parties").

### Recitals

Netflix is a subscription entertainment service providing consumers with access to motion pictures, television and other entertainment products in a variety of formats.

Relativity is in the business of developing, financing, producing and/or licensing to third parties the rights to exhibit and distribute certain Content, as defined below.

Netflix and Relativity desire to enter into a relationship whereby Relativity will grant Netflix a license to, among other things, exhibit and transmit such Content in accordance with the terms and conditions set forth below.

### Agreement

In consideration of the mutual promises contained herein and such other good and valuable consideration, the Parties agree as follows:

1.  Definitions.  All capitalized terms not otherwise defined herein shall have the meaning set forth on Schedule A attached hereto.

2.  Grant of Licenses; Netflix Rights.

    2.1.  Titles License.  Subject to the terms of this Agreement, including, without limitation, payment of each installment of the License Fee when due, Relativity shall grant to Netflix during the Term the exclusive right and license to exhibit and transmit the Titles (and associated Title Source Material) in their original language only in the Included Formats on an SVOD basis within the Territory by means of Internet Transmission via the Netflix Service to NEDs during such Titles' applicable Availability Periods.







4.    Relativity Obligations; Rights.

    4.1.    Titles Provided by Relativity.

        4.1.1.    Relativity shall designate for license to Netflix in accordance with Section 4.4.3, and Netflix shall accept, all pursuant to the terms of this Agreement, no fewer than (subject to Section 9.2) the applicable minimum number of Titles and no more than the applicable maximum number of Titles whose initial theatrical release date occurred in each calendar year of the Output Term (each "Year"), as set forth below:

| CALENDAR YEAR | MINIMUM TITLES | MAXIMUM TITLES |
|---|---|---|
| 2010 | ■ | ■ |
| 2011 | ■ | ■ |
| 2012 | ■ | ■ |

Execution Version

| | | |
|------|------|------|
| 2013 | ■ | ■ |
| 2014 | ■ | ■ |
| 2015 | ■ | ■ |
| 2016 | ■ | ■ |
| 2017 | 15 | ■ |
| 2018 | ■ | ■ |

For purposes of the above chart, Titles designated by Relativity that have an initial theatrical release date occurring in 2009 shall be deemed to have been released in 2010.

4.2.    Subject to penalty payment (if any) resulting from Relativity's failure to meet the minimum number of Titles requirement in any given Year as provided in Section 9.2. below, Relativity shall be free to license to any third party any feature films in a given Year that are not designated for license to Netflix pursuant to the terms hereof.

4.3.    Exclusivity; Holdbacks. During the period commencing on the Effective Date and continuing through the expiration of a Title's second Availability Period hereunder, Relativity (or its Affiliates) shall not, and shall not license or authorize any third party to license, exhibit, distribute or otherwise exploit any Title available to consumers in the Territory other than on a Theatrical, Non-Theatrical, home video (*i.e.,* on optical media such as DVD and/or Blu-ray discs), or purely VOD, PPV or EST basis; provided, however, that notwithstanding the foregoing, Relativity (or its Affiliates) may license or authorize any third party to license, exhibit, distribute or otherwise exploit any Title for Ad Supported EST or Free TV in the Territory during the period of time between such Title's first End Date and its second Start Date hereunder. If a Title licensed hereunder is available to consumers in the Territory in a material way in violation of the foregoing, and such violation is caused by a third party with whom Relativity (or an Affiliate) has a contractual relationship in connection with such Title, Relativity shall promptly, upon becoming aware of such violation, take commercially reasonable efforts to seek to cause the cessation of such violation.   So long as Relativity is using commercially reasonable efforts to seek to cause the cessation of such violation, such violation shall not be deemed a material breach of this Agreement giving rise to a termination right. Notwithstanding the foregoing, Netflix hereby reserves the right to pursue a damages claim against Relativity (or its Affiliates) or such third party for such violations, it being acknowledged and agreed that violations of the exclusivity and holdback provisions hereof caused by third party "pirates" or violations which are not material (e.g., customary spillover) shall neither be a breach hereunder or give rise to a damage claim by Netflix.

Execution Version

4.4.    Availability.

4.4.1.    Availability Periods.  Each Title licensed to Netflix hereunder shall have two (2) Availability Periods, the first of which shall be deemed the Pay 1 Window and the second of which shall be deemed the Pay 2 Window. Notwithstanding the foregoing, the first Availability Period for each Title shall be eighteen (18) consecutive months and the second Availability Period shall be twelve (12) consecutive months.

4.4.2.    Start Dates.  Each Title licensed to Netflix hereunder shall have two (2) Start Dates. The first Start Date for each Title shall be the date no later than the earlier of (a) one-hundred-twenty (120) calendar days after the earlier of (i) release of such Title for home video use (e.g., on optical media such as DVD and/or Blu-ray discs) within the Territory or (ii) the date of first Non-Premium VOD exploitation of such Title or (b) twelve calendar months after such Title's initial theatrical release in the Territory. The second Start Date shall be determined by Relativity in its discretion but shall in no event be later than the sixth $(6^{th})$ anniversary of such Title's first End Date (i.e., the End Date associated with such Title's first Availability Period).

4.4.3.    Notices.  Relativity shall provide Netflix with written notice (either separately or combined) of the following: the designation of a Title as one being licensed to Netflix hereunder; such Title's first Start Date; its Domestic Box Office and DBO Calculation; and whether Relativity elects to designate such Title as a Base Rate Title (if permitted pursuant to Section 5.1) (i) as soon as practicable, but in no event later than one hundred twenty (120) calendar days prior to the first Start Date, or (ii) such other date otherwise agreed to in writing (including by email) by the Parties.



4.6.    Withdrawal of Title if Subject to Third Party Claim.  Upon thirty (30) calendar days' written notice to Netflix, Relativity may withdraw any Title if Relativity reasonably believes that Netflix's continued transmission or other exploitation of such Title may subject Relativity and/or Netflix to material legal liability (as

Execution Version

determined by Relativity in its reasonable judgment), at which time all licenses granted hereunder with respect to such Title shall automatically terminate and all rights granted to Netflix thereby shall revert to Relativity (in each case, without further action on the part of any party). Relativity expressly acknowledges and agrees that its withdrawal rights under this Section 4.5 are limited, and that it shall not use such rights with the intention to materially frustrate the purpose or effect of the rights granted to Netflix hereunder to use and distribute the Content. With respect to any Title for which the licenses granted pursuant to this Agreement are terminated pursuant to this Section 4.5, Relativity shall give Netflix a pro-rata refund for a portion of the aggregate License Fees paid by Netflix for such Title as of the effective date of such termination. Such amount shall be pro-rated in the manner set forth in the second-to-last sentence of Section 9.3, and shall be due and payable to Netflix no later than thirty (30) calendar days after the effective date of such termination.

5.    License Fees.

5.1.    License Fees. Subject to the terms of this Agreement, Netflix shall, for each Title licensed to it hereunder, pay Relativity a flat fee equal to the relevant DBO Calculation (as to each Title, a "License Fee"). The DBO Calculation for each Title shall be calculated based upon the table set forth in Schedule D attached hereto.



Notwithstanding the foregoing, Relativity may designate up to five (5) Titles (each, a "Base Rate Title") at any given time during the Output Term for which Netflix shall be obligated to pay Relativity a minimum License Fee of Three Million Seven Hundred Thousand United States Dollars (US$3,700,000.00) (the "Base Rate") irrespective of the otherwise applicable DBO Calculation therefor; provided that, if any Base Rate Title has a DBO of Five Million United States Dollars ($5,000,000.00) or more, then such Title shall automatically no longer be deemed a Base Rate Title hereunder (except as provided in Section 5.4 below) and the License Fee for such Title shall be based on the DBO Calculation

Execution Version

therefor.  If any Base Rate Title has a DBO of less than Five Million United States Dollars (US$5,000,000.00), Netflix shall receive a credit equal to the difference between the Base Rate and the otherwise applicable DBO Calculation of the License Fee for such Base Rate Title.  Relativity may at any time, but in any event shall no later than thirty (30) calendar days after the end of the Year in which such Base Rate payment was made for a Base Rate Title, refund to Netflix or permit Netflix to credit against any License Fee(s) due and payable by Netflix prior to the last day of such thirty (30) calendar day period other than in connection with another Base Rate Title, as elected at Relativity's discretion, equal to such credit.  In determining the number of Base Rate Title slots available to Relativity at any time during the output Term (which may not exceed five (5) at any given time), a Base Rate Title slot assigned by Relativity to a particular Title shall become available again to Relativity in the event that such Base Rate Title (x) has a DBO of Five Million United States Dollars (US$5,000,000.00) or more, or (y) has a DBO of less than Five Million United States Dollars (US$5,000,000.00) but for which Netflix has received or recouped (or a combination of both) an amount equal to the credit for such Base Rate Title.  If Relativity fails to "true up" Netflix in accordance with the foregoing, in addition to any and all remedies available to Netflix hereunder, Relativity shall thereafter have no further right to designate Titles as Base Rate Titles hereunder, it being acknowledged and agreed, however, that Netflix shall remain obligated to pay the Base Rate for any Title previously designated as a Base Rate Title hereunder.



5.4.    Payment Details.  Each License Fee for any Title that has not been designated a Base Rate Title at any time shall be paid as follows:

For any Title that has been designated as a Base Rate Title at any time, the License Fee shall be paid as

Execution Version

follows: (a) on such Base Rate Title's initial Start Date, the greater of (i) one hundred percent (100%) of the Base Rate or (ii) fifty (50%) of the License Fee, and (b) on two hundred and seventy (270) calendar days from such Start Date, any remaining outstanding portion of the License Fee due and payable to Relativity. All amounts cited in this Agreement are in, and all payments due under this Agreement shall be made in, United States Dollars. Any amounts not paid when due shall bear interest at a rate of



5.6.    <u>Documentation Required of Lender to Relativity</u>.  Netflix shall, promptly upon the request of Relativity, enter into all agreements reasonably requested by Relativity or any financial institution or other party (each a "Lender") which extends or is willing to extend credit to Relativity against the License Fees payable to Relativity hereunder but in no event shall Netflix be required to enter into such agreements that cover unpaid License Fees for more than twenty five (25) Titles at any one time hereunder; provided such agreements are of a nature which are customarily entered into in connection with comparable credit facilities and shall not result in any additional material obligations on Netflix's part or otherwise adjust any term or provision of this Agreement other than the waiver, for the benefit of any such Lender, of any and all defenses (other than delivery of the Title Source Material in accordance with the terms, including delivery and timing provisions, hereof), if any, that Netflix may be entitled to assert against, or any and all rights, if any, which Netflix may have to offset against or otherwise withhold from amounts due and owing to Relativity hereunder.  Netflix acknowledges that this provision and Netflix's performance of its obligations under this <u>Section 5.6</u> is essential to Relativity and its willingness to enter into this Agreement.

6.    <u>Delivery</u>.

6.1.    <u>Source Material</u>.  For each Title licensed to Netflix hereunder, Relativity shall create and deliver to Netflix, at Relativity's sole expense, all categories of Source Material no later than thirty (30) calendar days prior to the applicable Start Date, or such other date otherwise agreed to in writing (including by

Execution Version

email) by the Parties. Simultaneously with each such delivery, Relativity shall provide Netflix with accurate music cue sheets for such Title which list, for each musical composition or sound recording in such Title, the relevant Performing Rights Organization. Source Material shall be loaned to Netflix for the purpose of encoding and title to the Source Material shall at all times remain in Relativity.



6.3.    Acceptance. Upon Netflix's receipt of the Title Source Material for a Title, Netflix shall have fifteen (15) business days in which to send Relativity written notice of its acceptance ("Notice of Acceptance") or rejection ("Notice of Rejection") of the Title Source Material for that Title, such acceptance or rejection to be based solely upon such material's compliance with the specifications set forth in Section 6.2 and Schedule B. In the event that Netflix displays or transmits files created from Title Source Material on or from the Netflix Service prior to issuing a Notice of Acceptance or a Notice of Rejection, or fails to provide a Notice of Acceptance or a Notice of Rejection within such fifteen (15) business day period, then such Title Source Material shall automatically be deemed accepted by Netflix. The issuance or deemed issuance by Netflix of a Notice of Acceptance shall make operative the license by Relativity of such Title to Netflix pursuant to this Agreement.



Execution Version



7.    Representations and Warranties; Indemnification; Limitation on Liability.

    7.1.    Netflix.  Netflix represents, warrants and covenants that:

        7.1.1.    it has the full right, power, legal capacity and authority to enter into and fully perform its obligations under this Agreement;

        7.1.2.    7.1.2  it shall maintain all rights granted to it by Relativity pursuant to this Agreement or otherwise free and clear of all liens, claims and encumbrances which might adversely affect any of Relativity's rights hereunder; and

        7.1.3.    it shall abide by all of Relativity's applicable contractual and/or guild restrictions (provided such restrictions are provided to Netflix in compliance with Section 2.2) and, when transmitting or otherwise exploiting Source Material, shall reflect all credits as delivered in such Source Material to Netflix, including Relativity's credit (provided such credits are provided to Netflix in compliance with Section 6).

    7.2.    Relativity.  Relativity (on its behalf and on behalf of its Affiliates) represents, warrants and covenants that:

        7.2.1.    it has the full right, power, legal capacity and authority to enter into and fully perform its obligations under this Agreement and to grant to Netflix the licensed granted therein;

        7.2.2.    there are no liens, claims, encumbrances, legal proceedings, or agreements with respect to Relativity or the Content that interferes with Netflix's exhibition and distribution thereof in accordance with this Agreement;

        7.2.3.    it either has and shall maintain sole and exclusive authority to license, exhibit, distribute or otherwise exploit each Title in the Territory to third parties for exhibition and distribution on a Pay TV and an SVOD basis prior to, during, or between such Title's Pay Television Windows and/or Availability Periods hereunder, or, if it does not have such sole and exclusive authority, it has and shall not license or authorize any third party to license, exhibit, distribute or otherwise exploit a Title available to consumers on a Pay TV and an SVOD basis in the Territory prior to, during, or between such Title's Pay Television Windows and/or Availability Periods hereunder (provided, however, that Relativity's obligations with respect to ceasing a violation of the foregoing in connection with a particular Title shall be as set forth in Section 4.2);

Execution Version

7.2.4.   it has not nor shall it (nor shall it license or authorize a third party to) license, exhibit, distribute or otherwise exploit any Title in the Territory on a Pay TV or PVOD basis prior to, during, or between such Title's Pay Television Windows and/or Availability Periods hereunder (provided, however, that Relativity's obligations with respect to ceasing a violation of the foregoing in connection with a particular Title shall be as set forth in Section 4.2);

7.2.5.   it has not, nor shall it (nor shall it license or authorize a third party to) license, exhibit, distribute or otherwise exploit any Title in the Territory on a Free TV or an Ad Supported EST service prior to or during such Title's Pay 1 Window and/or during such Title's Pay 2 Window (provided, however, that Relativity's obligations with respect to ceasing a violation of the foregoing in connection with a particular Title shall be as set forth in Section 4.2);

7.2.6.   it has and shall maintain during the Term all rights, titles, authorizations, consents and interests necessary to grant Netflix the licenses granted in this Agreement (solely excluding any rights, titles, authorizations, consents and interests needed from Public Performance Organizations as a result of Netflix's exhibition and transmission of the Content); and

7.2.7.   as between Relativity and Netflix, Relativity has satisfied and shall satisfy during the Term all third party obligations of any kind (solely excluding any obligations due to Public Performance Organizations as a result of Netflix's exhibition and distribution of the Content) with respect to the Content, its production, and its exhibition and transmission by Netflix in accordance with this Agreement, including without limitation all royalties or other payments owing to any other Content owners, distributors, and/or guild or collective bargaining entities, and Netflix shall have no obligation for any such past, current or future royalties or payments.



Execution Version

7.4.    <u>Disclaimer</u>.    EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN <u>SECTION 7.1</u>, <u>SECTION 7.2</u> AND <u>SECTION 7.3</u>, ALL INFORMATION, PRODUCTS AND SERVICES PROVIDED BY A PARTY TO THE OTHER UNDER THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ALL CONTENT, THE RELATIVITY MARKS AND THE NETFLIX SERVICE (INCLUDING WITHOUT LIMITATION ANY TECHNOLOGY USED BY OR INCLUDED THEREIN, AND ANY APPLICATIONS) ARE PROVIDED "AS IS" AND "AS AVAILABLE," WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

7.5.    <u>Indemnification</u>.

7.5.1.    <u>By Netflix</u>.  Netflix shall defend, indemnify and hold harmless Relativity, its Affiliates and their respective directors, officers, and employees from and against any and all losses, damages, claims, liability or expenses (including reasonable outside attorneys' fees and costs) actually incurred as a result of any third party claim (collectively, a "<u>Claim</u>") to the extent arising out of (a) any breach or alleged breach of the representations and warranties  made in <u>Section 7.1</u> or covenants made hereunder, (b) any claim that the Netflix Service or any advertising or promotional material created by Netflix in connection with any of the Titles (expressly excluding any Content) infringes the rights of any third party, violates any applicable law, rule or regulation, or that any such marketing or promotion material constitutes an endorsement of any service or product (other than whatever indirect endorsement of Netflix is implied by its transmitting the Titles), (c) any failure by Netflix make payments, if and as required, to the Performing Rights Organizations, as described in <u>Section 7.3,</u> and (d) any failure by Netflix to pay any income or other Taxes required to be paid by Netflix to any governmental entity on monies earned by Netflix hereunder or as a result of Netflix's performance of its obligations hereunder.

7.5.2.    <u>By Relativity</u>.    Relativity shall defend, indemnify and hold harmless Netflix, its directors, officers, and employees from and against any Claim to the extent arising out of (a) any breach or alleged breach of the representations, warranties made in <u>Section 7.2</u> or <u>Section 7.3</u> or covenants made hereunder, (b) any claim that Netflix's exhibition and transmission of the Relativity Marks and/or Content in accordance with this Agreement violates or infringes any rights of any third party, including without limitation any third party intellectual property rights, contract rights, moral rights, music synchronization rights, rights of publicity, and rights of privacy, or defames or constitutes unfair competition against such third party (<u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary, Relativity is not indemnifying

13

Netflix from and against any such Claims or claims to the extent arising or related to the use of any music contained in any Content for advertising and promotional purposes other than the "in context" use of any music contained in Ad/Pub Source Material supplied by Relativity), (c) any claim that the Content, Relativity Marks and/or Netflix's exhibition, distribution and/or other exploitation of same in accordance with this Agreement violates any applicable law, rule or regulation, and (d) any failure by Relativity to pay any income or other Taxes required to be paid by Relativity to any governmental entity on monies earned by Relativity hereunder or as a result of Relativity's performance of its obligations hereunder.



7.6.    Limitation of Liability. EXCEPT FOR EACH PARTY'S INDEMNIFICATION OBLIGATIONS AS SET FORTH IN SECTION 7.5 OR ANY DAMAGES RESULTING FROM (A) ANY BREACH OF A PARTY'S CONFIDENTIALITY OBLIGATIONS SET FORTH IN SECTION 8 AND/OR (B) THE INTENTIONAL MISCONDUCT OR GROSS NEGLIGENCE OF EITHER PARTY OR ITS PERSONNEL, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF BUSINESS PROFITS) ARISING OUT OF OR RELATED TO THIS AGREEMENT, REGARDLESS OF THE FORM OF THE ACTION AND EVEN IF A REPRESENTATIVE OF THE PARTY ALLEGEDLY LIABLE WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY OF SUCH DAMAGES. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

Execution Version

8.    Confidentiality.

    8.1.    Confidential Information.    Each party acknowledges and agrees that all business and technical information provided to it by the other party pursuant to this Agreement constitutes confidential and/or proprietary information of the other party ("Confidential Information").    Confidential Information shall include all oral, written or recorded confidential and/or proprietary information about or related to the disclosing party or its business including, without limitation, the terms and conditions of this Agreement, and any financial, technical, strategic or marketing plans disclosed by either party to the other party, whether or not such information or materials are marked as "confidential" or "proprietary."    Notwithstanding the foregoing, Confidential Information does not include information that (a) is or becomes publicly available without breach of this Agreement, (b) can be shown by documentation to have been known to the receiving party prior to its receipt from the disclosing party, (c) is rightfully received from a third party who did not acquire or disclose such information by a wrongful or tortious act or (d) can be shown by documentation to have been developed by the receiving party without use of or reference to any Confidential Information of the disclosing party.

    8.2.    Use of Confidential Information.    Neither party shall use the other's Confidential Information for its own use or for any purpose other than as necessary to perform or enforce its rights and/or obligations under this Agreement, or disclose such information to any third party (except for attorneys and potential and existing investors, lenders or financiers who have a need to know such information), provided that such parties are bound to a confidentiality agreement that contains confidentiality obligations and non-disclosure restrictions that are at least as protective as those contained in this Section 8).    Relativity may also disclose the License Fee, Start Date(s) and End Date(s) for a Title to relevant third party income participants  In addition, each party is entitled to disclose the terms and conditions of this Agreement as required by law or by court order, including applicable securities law, provided that such party notifies the other party of the required disclosure promptly so that such other party may seek a protective order or other appropriate remedy. Each party shall take all reasonable measures to protect the secrecy of and avoid disclosure of Confidential Information, which measures shall be no less than reasonable care and shall include all of those measures that the receiving party uses to protect its own Confidential Information.    This Section 8 shall survive expiration or earlier termination of this Agreement.

9.    Termination; Remedies.

    9.1.    General.    Either party may terminate this Agreement:

        9.1.1.    in the event of a material uncured breach or default by the other party of any of its obligations under this Agreement; provided, however, that

Execution Version

notice is provided to the other party in writing and such breach or default is not cured within thirty (30) calendar days following the date such notice is deemed given; or

9.1.2.  in the event that the other party (a) institutes or otherwise becomes a party, voluntarily or involuntarily, to a proceeding alleging or pertaining to the insolvency or bankruptcy of that party; (b) is dissolved or liquidated; (c) makes an assignment of its material assets for the benefit of creditors; and/or (d) initiates or is subject to reorganization proceedings. This Agreement shall be terminable on the date written notice is deemed given to such party.

9.2.    Circumvention; Netflix Remedy.  If Relativity fails to license to Netflix in accordance with the terms of this Agreement in all material respects the minimum number of Titles specified in Section 4.1.1 for each Year of the Output Term, Netflix's sole remedy shall be a penalty payment of Five Million United States Dollars (US$5,000,000) for each Title below the minimum number of Titles required (*e.g.,* if in 2012, which has a minimum Title requirement of eight (8), Relativity licenses only five (5) Titles to Netflix, Relativity shall pay Netflix Fifteen Million United States Dollars (US$15,000,000.00)).  Any such payment shall be due and payable no later than thirty (30) calendar days after the last day of the relevant Year. Notwithstanding the foregoing, if the aggregate number of feature films financed, produced and/or distributed, in whole or in part, by Relativity or any Affiliate during any Year (specifically excluding for this purpose any movies co-financed by Relativity through a multiple picture equity co-finance arrangement of not less than five (5) feature films) is, despite Relativity's good faith efforts, insufficient to meet the minimum Title requirements for such Year, Netflix shall not be entitled to the foregoing penalty payment(s) or any other damages for such Year.  Further, Netflix shall not be entitled to the foregoing penalty payment(s) or any other damages for any feature film not licensed to Netflix hereunder, but for which Relativity can reasonably document that it entered into a distribution agreement with a theatrical distribution entity in which Relativity licensed to such entity all Television, Theatrical and home video (*i.e.,* physical medium, including DVD and/or Blu-ray) distribution rights in the Territory for such feature film.  Relativity shall provide to Netflix, upon Netflix's request, an affidavit by an authorized officer of Relativity indicating such license has been granted. In the event all or substantially all of the equity securities or assets of Relativity (or its parent) is acquired by a third party and Relativity ceases to exist as a business entity operating separate from the company so acquiring it, the obligation to make available to Netflix a minimum number of Titles each Year of the Output Term shall be of no further force or effect and Relativity shall thereafter be no longer liable for any penalty payments for not meeting the minimum title requirement specified in this Agreement; provided, that, for the avoidance of doubt, any Title that has been designated under this Agreement for license to Netflix and the initial Start Date has not yet occurred and those Titles previously licensed

to Netflix hereunder shall remain subject to the terms of this Agreement for license. Furthermore, for the avoidance of doubt, any such third party acquirer of Relativity has no obligation to continue operating Relativity as a separate business entity.

9.3.    Effect of Termination or Expiration.



Further, in the event that this Agreement is terminated by Netflix as a result of a material, uncured breach or default by Relativity, Relativity shall give Netflix a pro-rata refund for a portion of the aggregate License Fees paid by Netflix for Titles as of the effective date of such termination calculated on a "straight-line" basis within each Availability Period, based upon the portion of the Availability Period(s) for such Titles that have expired prior to such termination, or according to the most favorable practices (from Relativity's standpoint) then used by Netflix. Netflix shall notify Relativity of any change to its practices upon the occurrence of such change. The amount to be refunded to Netflix pursuant to the preceding sentence shall be due and payable no later than thirty (30) calendar days after the effective date of such termination.

10.    General Provisions.

10.1.    Governing Law; Dispute Resolution. This Agreement and all disputes, claims, actions, suits or other proceedings arising out of same shall be governed by and construed and enforced in accordance with the laws of the State of California (United States of America) applicable to contracts wholly made and to be performed within the State of California, without regard to its rules on conflict of laws or any other rules that would result in the application of a different

    Execution Version

body of law. The Parties irrevocably consent and submit to the exclusive jurisdiction and venue of the Federal and State Courts located in Santa Clara County, California for purposes of any proceeding arising out of or relating to this Agreement.

10.2. Attorneys' Fees. The prevailing party in any litigation or other proceeding arising out of or relating to this Agreement shall be entitled to collect from the non-prevailing party its reasonable costs and expenses, including without limitation reasonable outside attorneys' fees.



10.6. Publicity.

10.6.1. The Parties shall disseminate a joint press release, in a form materially similar to the draft release attached hereto at Schedule E, announcing this Agreement and the availability of the Titles through the Netflix Service. The release date of such announcement shall be mutually agreed to by the Parties.

10.6.2. Except as required by law, including applicable securities laws, neither party shall issue any public announcement (a) prior to the release of the press release, regarding the existence of this Agreement or (b) at any time, regarding terms or conditions of this Agreement, without the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned or delayed.

Execution Version

10.7. <u>Notice</u>.    Except as otherwise provided for herein, notices and other communications required or permitted to be given hereunder shall be given in writing and delivered in person, sent via certified mail or delivered by nationally-recognized courier service, properly addressed and stamped with the required postage, if applicable, to the applicable individuals and addresses specified below.  Notice shall be deemed effective upon receipt.

*If to Netflix*:

Netflix, Inc.
Attention:  Robert Kyncl, VP, Content
345 N. Maple Drive, Suite 300
Beverly Hills, CA 90210

*With a copy to*:

Attention:  General Counsel
100 Winchester Circle
Los Gatos, CA  95032

*If to Relativity*:

Relativity Media, LLC
Attention: Andrew Marcus, Chief Operating Officer
8899 Beverly Blvd., Suite 510
West Hollywood, CA 90048

*With a copy to*:

Attention: Mr. Michael Joe and Mr. Greg Shamo
8899 Beverly Blvd., Suite 510
West Hollywood, CA 90048

*And with a copy to:*

Loeb & Loeb LLP
Attention:  Michael A. Mayerson, Esq.
10100 Santa Monica Boulevard, 22nd Floor
Los Angeles, California 90067

10.8. <u>Assignment</u>.  Other than as set forth below, neither this Agreement nor any rights, licenses or obligations hereunder may be assigned by either party without the prior written approval of the non-assigning party, which shall not be unreasonably withheld or delayed.  Notwithstanding the foregoing, either party may assign this Agreement to any wholly-owned subsidiary of such party or any acquirer of all or of substantially all of such party's equity securities or assets, provided that (a) such party provides the non-assigning party with

19                                    <span>Execution Version</span>

written notice, (b) such entity agrees in writing to assume all of its obligations under this Agreement, and (c) in the case of an assignment to a wholly-owned subsidiary of Netflix or Relativity, Netflix or Relativity, respectively, shall remain primarily liable for all of the assigned obligations. For the avoidance of doubt, Relativity may assign or grant a security interest in any or all of its rights under this Agreement to any lender, trustee or agent pursuant to any financing or refinancing to be entered into by Relativity and any assignment of this Agreement by way of exercise of any default remedy by a collateral assignee, any transferee or assignee thereof (including any transferee in a foreclosure sale) shall be permissible and shall not be a violation of this Agreement. Any purported assignment not in accordance with this section shall be void. Subject to the foregoing, and further subject to the penultimate sentence of Section 9.2 above, this Agreement will benefit and bind the Parties' successors and assigns and the name of a party as used in this Agreement shall mean its permitted successor and assign.

10.9.   Severability. If any provision of this Agreement, other than a provision going to the essence of the Agreement, is held to be unenforceable by a court of competent jurisdiction, such decision shall not affect the validity or enforceability of any other provision of this Agreement. Any provision of this Agreement held invalid or unenforceable shall, to the extent practicable, be substituted with a valid and enforceable provision that achieves the results contemplated by the Parties in the original provision.

10.10.  Consents. Except as specifically set forth in this Agreement, all consents, requests, authorizations and approvals to be given by either party under this Agreement shall (a) be in writing and (b) not be unreasonably withheld or delayed.

10.11.  No Waiver. Except as specifically set forth in this Agreement, no failure or delay by either party to exercise any right or enforce any obligation shall impair or be construed as a waiver of that or any other right or power, including without limitation the right to terminate this Agreement, unless made in writing and signed by both Parties.

10.12.  Independent Contractors. Netflix and Relativity are independent contractors, and shall not be deemed partners, franchisees, agents or joint venturers of each other. Neither party will have any right or authority to obligate or bind the other party in any manner whatsoever.

10.13.  No Third Party Beneficiaries. There are no third party beneficiaries, actual or intended, under this Agreement.

10.14.  Headings. The headings of Sections and subsections in this Agreement are provided for convenience only and shall not affect its construction or interpretation.

Execution Version

10.15. <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which together shall constitute one and the same Agreement.

10.16. <u>Entire Agreement</u>.  This Agreement supersedes all prior or contemporaneous negotiations and agreements (whether oral or written) between the Parties with respect to the subject matter thereof and constitutes, along with its Schedules, a complete and exclusive statement of the terms and conditions of the Agreement between the Parties with respect to such subject matter.  This Agreement may not be amended or modified except by the written agreement of both Parties. The language of this Agreement is English, and any translations shall have no effect and shall not be binding.

Execution Version

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

RELATIVITY MEDIA, LLC

By: _____

Name: Andrew Marcus
Title: Chief Operating Officer

NETFLIX, INC.

By: _____

Name: Ted Sarandos
Title:   Chief Content Officer

**Schedule A**

**Definitions**



"Affiliate" shall mean any business entity in which Relativity directly or indirectly owns or controls the shares of stock having ordinary voting power to elect a majority of the board of directors (or appoint other comparable managers) or otherwise possesses the power to direct the affairs of the entity.



"Availability Notice" shall have the meaning set forth in Section 4.3.3.

"Availability Period(s)" shall mean, with respect to each Title, the period(s) of time during which such Title may be exhibited and transmitted through the Netflix Service, which period(s) shall commence on the applicable Start Date(s) and end on the applicable End Date(s).

"Base Rate Title" shall have the meaning set forth in Section 5.1.

"Claim" shall have the meaning set forth in Section 7.5.1.

"Confidential Information" shall have the meaning set forth in Section 8.1.

"Content" shall mean the Titles, Source Material and Promotional Samples, collectively.

Execution Version

"DBO" or "Domestic Box Office" shall mean the domestic (United States and Canada) theatrical box office performance of a Title, as reported in "Daily Variety" or by EDI as of the date such Title's is first commercially released in the Territory for home video use (*i.e.*, on optical media such as DVD and/or Blu-ray discs) or for Non-Premium VOD, whichever is earlier.

"End Date" shall mean, for each Title, 11:59 pm Pacific Standard Time on the date on which such Title's relevant Availability Period expires.



"Internet Transmission" shall mean the transmission of data using Internet Protocol (commonly known as "IP") and any similar or successor protocols, means, methods, processes or technologies now or hereafter devised, including without limitation through use of client software contained on a Blu-ray disc or other optical media.

"Indemnified Party" shall have the meaning set forth in Section 7.5.3.

"Indemnifying Party" shall have the meaning set forth in Section 7.5.3.

"License Fees" shall have the meaning set forth in Section 5.1.

"Netflix-Enabled Device" or "NED" shall mean any device that is capable of receiving data via Internet Transmission, including without limitation: (a) a desktop or laptop computer, (b) an Internet-enabled television set, (c) an Internet-enabled set top box, including without limitation a box with an integrated personal digital video recorder and/or a general web browser, (d) an Internet-enabled DVD and/or Blu-ray player, (e) an Internet-enabled game console, (f) a portable device, including without limitation a mobile or "smart" phone, and (g) any device that supports a web browser.

"Netflix Service" shall mean the non-Ad Supported service operated by Netflix that provides Subscribers with access to and interaction with motion pictures, television and other entertainment products in a variety of formats (including without limitation High Definition) through such means as Internet Transmission, including through Applications, and/or delivery of optical discs (e.g., DVD and Blu-ray discs).



"Non-Theatrical" shall mean the exhibition of a motion picture, television show or other entertainment product to audiences in educational and/or institutional facilities, including museums, film societies, libraries, governmental agencies, business, religious and civic organizations, U.S. military bases, nursing homes, retirement centers, hospitals, hotels, motels, prisons, forestry camps and other similar locations, and on all forms of common carrier transportation, including airlines, ships, trains and buses, for which admission fee may be charged.

"Notice of Acceptance" shall have the meaning set forth in Section 6.3.

"Notice of Rejection" shall have the meaning set forth in Section 6.3.

"Output Term" shall mean the period commencing on the Effective Date and ending on December 31, 2018.



Schedule A

Execution Version



"Relativity Marks" are set forth on Schedule C attached hereto.

"Source Material" shall mean, collectively, the source files for the Titles (the "Title Source Material") and associated promotional material, such as trailers, artwork, clips, stills, text data and metadata (collectively, the "Ad/Pub Source Material").

"Start Date(s)" shall mean, for each Title, 12:01 am Pacific Standard Time on the date on which such Title's relevant Availability Period begins.

"Subscriber" shall mean any person who has been authorized by Netflix to receive a subscription to the Netflix Service, including without limitation a free-trial, gift or other promotional subscription (which, solely in the case of a free trial, shall be for a limited time period of not more than thirty (30) calendar days).

"Subscription Video-On-Demand" or "SVOD" shall mean the delivery and/or exhibition of motion pictures, television and/or other entertainment products on a commercially uninterrupted basis, where the consumer is charged a recurring fee and/or periodic access charge for the service. For the avoidance of doubt, any delivery and/or exhibition of motion pictures, television and other entertainment products which requires a consumer solely to pay a "per-title," "per-exhibition" or "per-transmission" fee shall not be deemed "Subscription Video-On-Demand."



"Term" shall mean the period commencing on the Effective Date and ending on the expiration date of the last Availability Period to expire hereunder.

"Territory" shall mean the United States (including without limitation the fifty (50) States, the District of Columbia) and the following territories, commonwealths and possessions thereof: Puerto Rico, Northern Mariana Islands, Guam, American Samoa, Baker Island, Howland Island, Jarvis Island, Kingman Reef, Midway Islands, Navassa Island, Palau, Palmyra Atoll, U.S. Virgin

Execution Version

Islands, Wake Island, Johnston Atoll and U.S. military bases in any of the foregoing or any foreign country.

"Theatrical" shall mean the exhibition of a motion picture, television show or other entertainment product or program (regardless of the means of delivery) in conventional, drive in or special format (e.g., iMax) theaters that are open to the general public and for which an admission fee is charged.

"Titles" shall mean any and all (subject to Section 4.1.1) first run, theatrically released feature films that are financed, produced, and/or distributed, in whole or in part, by Relativity or an Affiliate and for which Relativity (or an Affiliate) controls, in whole or in part, the Pay TV and SVOD rights in the Territory and whose first theatrical release in the Territory occurs during the Output Term and which are designated by Relativity for license to Netflix hereunder.



"Year" shall have the meaning set forth in Section 4.1.1.

## Schedule B

### Source Material Requirements and Specifications

### Feature Source Requirements and Specifications

# Table of Contents





Execution Version



Schedule B

Execution Version



Schedule B

Execution Version



Schedule B

Execution Version





Schedule B

Execution Version



Schedule B



Execution Version

| | |
|---|---|
| ■■■■ | ■■■■■■■■■■■■■■■■■■■■■■ ■■■■■ |
| ■■■■■■ | ■■■■■■■■■■■■■■■ ■■■■ |

## Schedule C

## Relativity Marks

To be added subsequent to the Effective Date.

## Schedule D

## DBO Calculation



## Schedule E

## Draft Press Release

To be mutually agreed upon.

## AMENDMENT NO. 1
## TO
## LICENSE AGREEMENT FOR INTERNET TRANSMISSION

THIS AMENDMENT NO. 1 (this "Amendment"), made as of November 1, 2010, is entered into by and between Netflix, Inc., a Delaware corporation with its principal place of business at 100 Winchester Circle, Los Gatos, CA 95032 ("Netflix") and RML Distribution Domestic, LLC, a California limited liability company, with its principal place of business at 8899 Beverly Blvd., Suite 510, West Hollywood, CA 90048 ("Relativity") as successor-in-interest to Relativity Media LLC (Netflix and Relativity are collectively referred to as the "Parties"), to amend the License Agreement for Internet Transmission, entered into by and between the Parties and dated as of June 1, 2010 (the "Agreement"). Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Agreement.

In consideration of the promises and covenants contained herein as well as other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto have agreed that the Agreement shall be, and hereby is, amended and modified as follows:

1.      Netflix and Relativity agree that certain Affiliates of Relativity formed, owned or maintained in connection with production, distribution and/or licensing of one or more motion pictures (each, an "Applicable Affiliate") may from time to time directly grant, license and assign to Netflix all necessary rights in and to Titles under the Agreement as if such Titles were licensed directly by Relativity to Netflix under the Agreement. The Applicable Affiliate shall be added as a party to the Agreement solely for the purposes described herein, provided that it executes the applicable Title Designation Notice (which such Title Designation Notice shall, *inter alia*, provide that such Applicable Affiliate shall be joined as a party to the Agreement for purposes of Article 6, Article 7 and Article 9 and Section 10.1 of the Agreement solely in connection with the applicable Title) and such notice is also executed by the Parties.

2.      Each of the Parties hereto confirms and agrees that notwithstanding the fact that Netflix is agreeing to permit an Applicable Affiliate to directly make the relevant grant, license, and assignment with respect to a Title as an accommodation to Relativity, such Applicable Affiliate's obligations to Netflix with respect to the applicable Title shall be deemed to be those of such Applicable Affiliate and Relativity, jointly and severally in all respects, including, without limitation, with respect to all representations, warranties, approval rights and/or other obligations to Netflix with respect to the applicable Title.

3.      Except as otherwise expressly provided in this Amendment, (a) Netflix's rights and remedies set forth in the Agreement as they relate to Titles other than the applicable Title shall not be enforceable against the Applicable Affiliate granting rights to such Title, and (b) the obligations to Netflix set forth in the Agreement (as amended hereby) with respect to any Title shall be the obligations of the Applicable Affiliate (joined with respect to such Title, if applicable) and Relativity, jointly and severally. For the avoidance of doubt, in the event of any breach by Relativity or the Applicable Affiliate of any of its or their representations, warranties or other obligations to Netflix set forth in the Agreement (as amended hereby) with respect to a Title, all rights and remedies of Netflix shall be enforceable against the Applicable Affiliate (joined with respect to such Title, if applicable) and Relativity jointly and severally.

Except as expressly modified under this Amendment, all of the terms and conditions set forth in, and all of the Parties respective obligations under, the Agreement, and all other documents, agreements and instruments relating thereto, shall remain in full force and effect, and each Party acknowledges, confirms and ratifies all such terms, conditions and obligations.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 1 as of the day and year first written above.

NETFLIX, INC.

By:_____

Name:_____

Title:_____

RMLS DISTRIBUTION DOMESTIC, LLC

By:_____

Name:_____

Title:_____

**AMENDMENT NO. 2**
**TO**
**LICENSE AGREEMENT FOR INTERNET TRANSMISSION**

THIS AMENDMENT NO. 2 (this "Amendment No. 2"), made as of August 31, 2011, is entered into by
and between Netflix, Inc., a Delaware corporation with its principal place of business at 100 Winchester
Circle, Los Gatos, CA 95032 ("Netflix") and RML Distribution Domestic, LLC, a California limited
liability company, with its principal place of business at 8899 Beverly Blvd., Suite 510, West Hollywood,
CA 90048 ("Relativity") as successor-in-interest to Relativity Media LLC (Netflix and Relativity are
collectively referred to as the "Parties"), to amend the License Agreement for Internet Transmission,
entered into by and between the Parties and dated as of June 1, 2010, as amended by Amendment No. 1 as
of November 1, 2010 (collectively, the "Agreement"). Capitalized terms not otherwise defined herein
shall have the respective meanings set forth in the Agreement.

In consideration of the promises and covenants contained herein as well as other good and valuable
consideration, the receipt of which is hereby acknowledged, the parties hereto have agreed that the
Agreement shall be, and hereby is, amended and modified as follows:





Except as expressly modified under this Amendment, all of the terms and conditions set forth in, and all of the Parties' respective obligations under, the Agreement, and all other documents, agreements and instruments relating thereto, shall remain in full force and effect, and each Party acknowledges, confirms and ratifies all such terms, conditions and obligations.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 2 as of the day and year first written above.

NETFLIX, INC.

By: _____

Name: Pauline Fischer

Title: VP, Content Acquisition

RML DISTRIBUTION DOMESTIC, LLC

By: _____

Name:

Title:

## SCHEDULE A



## AMENDMENT NO. 3
## TO
## LICENSE AGREEMENT FOR INTERNET TRANSMISSION

THIS AMENDMENT NO. 3 (this "Amendment"), made as of October 20, 2011, is entered into by and between Netflix, Inc., a Delaware corporation with its principal place of business at 100 Winchester Circle, Los Gatos, CA 95032 ("Netflix") and RML Distribution Domestic, LLC, a California limited liability company, with its principal place of business at 8899 Beverly Blvd., Suite 510, West Hollywood, CA 90048 ("Relativity") as successor-in-interest to Relativity Media LLC (Netflix and Relativity are collectively referred to as the "Parties"), to amend the License Agreement for Internet Transmission, entered into by and between the Parties and dated as of June 1, 2010 as amended by Amendment No. 1 dated as of November 1, 2010 and Amendment No. 2 dated as of August 31, 2011 (collectively the "Agreement"). Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Agreement.

In consideration of the promises and covenants contained herein as well as other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto have agreed that the Agreement shall be, and hereby is, amended and modified as follows:





Except as expressly modified under this Amendment, all of the terms and conditions set forth in, and all of the Parties respective obligations under, the Agreement, and all other documents, agreements and instruments relating thereto, shall remain in full force and effect, and each Party acknowledges, confirms and ratifies all such terms, conditions and obligations.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 3 as of the day and year first written above.

NETFLIX, INC.

By:

Name: Pauline Fischer

Title: VP, Content Acquisition

RML DISTRIBUTION DOMESTIC, LLC

By:

Name:      Steve Bertram

Title:      President