# EXHIBIT C

# (April 25 Letter)



April 25, 2018

**By Email and Federal Express**

Bryony Gagan, Esq.
Netflix, Inc.
5808 West Sunset Boulevard
Los Angeles, California 90028
bgagan@netflix.com

Re:  Netflix Letter of April 4, 2018

Dear Ms. Gagan:

As discussed during our telephone conversation of April 10th, I wanted to take this opportunity to respond in writing to your letter of April 4th.

We do not believe that Relativity Media, LLC (together with its subsidiaries and affiliates, "Relativity") is in breach of its 2010 license agreement (as amended, the "License Agreement") with Netflix, Inc. ("Netflix"), and I wanted to outline our thinking in this letter.  We are continuing to consider and investigate this matter further, and should we reach a different conclusion we will appropriately inform you.

Your letter references two breaches, and I'll respond to each in turn (as captioned in your letter).  For convenience, capitalized terms that are not defined below will have the meanings ascribed to them in the License Agreement.

"1.  Section 4.3 – Breach of Exclusivity"

If I understand your claim correctly, you indicated that we breached Section 4.3 of the License Agreement because, in respect of five Titles that you list in your letter that are covered by the License Agreement, we authorized SVOD distribution through a competitor (Amazon/Starz) during the period between your two Availability Periods under the License Agreement; and, with respect to one Title, that the impermissible authorization straddled your second Availability Period.

As a threshold matter, please be advised that we did not authorize any such distribution.  To the extent that any of the Titles may have appeared on competitors' services during your

exclusivity period, it would have been as a result of inadvertence on the part of third parties with whom we have a contractual relationship – and not by Relativity.  Specifically:

With respect to the first four Titles (The Lazarus Effect, The Woman in Black 2: Angel of Death, Beyond the Lights, and Hector and the Search for Happiness), to the extent these Titles were in fact available on any competing SVOD service, since receiving your April 4th letter we have taken steps to ensure that any such availability on those services was discontinued promptly.

With respect to the fifth Title (And So It Goes), we are not aware of any basis to assert that it was made available on any competing SVOD service between its first End Date and second Start Date, as you've claimed.  We also believe that your Second Availability period concluded on February 28, 2018.

As it relates to damages, you have claimed that the asserted breaches would constitute a substantial infringement of your rights, that they have irreparably damaged the value of your license for the Titles, and that they are incurable.  We do not believe that is the case: Even if you assume that the Titles were available on the competing services for a period of time during your exclusivity periods, as I noted we have taken steps to remedy that situation, we do not believe that it is continuing, and we are not aware of any basis to conclude that the Titles' availability for a limited period caused Netflix any material harm.

I should also note in this context that Section 4.3 of the License Agreement provides that (1) so long as we are using commercially reasonable efforts to seek to cause the cessation of any exclusivity violations that may occur as a result of the actions of third parties, your sole remedy would be to seek to pursue a claim of damages, and (2) there is no right for Netflix to collect damages if the breach is not material.  Nevertheless, you've calculated an amount of damages of over $12 million, based on, if I understand you correctly, a proportionate amount of the time remaining in your exclusivity periods at the time of the alleged breaches, and relating that to the total license fee of $31.5 million.  We do not believe that this would be an appropriate measure of damages for alleged exclusivity breaches (particularly ones that, if they existed, have been cured).

As indicated above, our review of these matters is ongoing, and this response is preliminary based on our findings and our review of the License Agreement to date.

"2.    Section 9.2 – Failure to Deliver the Minimum Theatrical Output and Breach of the Contractual Remedy Provision"

Your second claim of a breach is for nonpayment of penalties owing based on our failure to deliver the minimum number of films for 2017 (set at 15 in the License Agreement, but if I read your letter correctly you are claiming failure to deliver 12, as we delivered three).

As you know, the relevant provisions of the License Agreement provide an exception to the obligation to pay penalties for failure to meet the minimum delivery requirements if the

number of feature films financed, produced and/or distributed by Relativity is insufficient to meet that requirement despite Relativity's good faith efforts; and, thus, no monetary penalties or damages are provided for in the License Agreement. I do not believe you to be claiming that Relativity had an additional 12 titles to meet the minimums, or that Relativity's not having them resulted in any way from a lack of good faith.

Additionally, please recall the context of the 2017 film-delivery obligation, which was as Relativity was emerging from bankruptcy and struggling to get its operations back on track. You will remember that the minimums obligation and our good faith were indeed litigated in that bankruptcy proceeding. Netflix did not dispute the existence of the exemption to the penalty obligation, nor did it claim that failure by Relativity to make the minimums in 2017 would not be in good faith (Netflix argued instead, without success, that penalties were not its sole remedy). The Bankruptcy Court noted that there was nothing in the record suggesting that the failure to make the minimums would be not in good faith:

"[Q]uite the contrary….the record that I have in front of me in terms of good faith is that not just good-faith efforts have been made, heroic efforts have been made to put this business back together and to put it in the position to generate as much content for you as they can." (Feb. 2, 2016, Transcript p. 84, ll. 18-24; pp. 86-87, ll. 23-25, 1-2).

As the Court also noted, Relativity would have to face the challenge of climbing out of bankruptcy and reestablishing its market credibility.

As I noted above with respect to the exclusivity violation claim, our review of the minimums issue is preliminary as well, and if you believe we have missed anything significant we'd be happy to discuss.

*   *   *

Inasmuch as our review is ongoing, we reserve the right to supplement or modify our response. Nothing herein should be deemed an acknowledgment that any of your claims is valid, nor should our silence on any assertion or other matter be deemed any such acknowledgement. We also reserve all of our other rights and remedies with respect to Netflix's claims.

I look forward to discussing this further with you as our review continues.

Very truly yours,

Lori Sinanyan