# EXHIBIT G

## (May 24 Letter)



May 24, 2018

<u>By Email and Federal Express</u>

Stephen R. Mick
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067

Re:  <u>Netflix's Purported Further Notice of Breach</u>

Dear Mr. Mick:

I am writing on behalf of RML Distribution Domestic, LLC (together with its affiliates, "Relativity") in response to your letter of May 21, 2018 as counsel for Netflix, Inc. ("Netflix"), in which you claim further supposed breaches by Relativity.  There is no basis whatsoever for these latest claims.  They simply continue Netflix's course of conduct of attempting to pressure Relativity to make concessions under the 2010 license agreement between the parties (as amended, the "License Agreement") or cripple Relativity's ability to move forward.  Relativity reserves all of its rights in connection with any such claims, including seeking appropriate damages and sanctions in the event Netflix pursues them.

You begin your letter by asserting Netflix "recently learned" that Macquarie US Trading LLC ("Macquarie") foreclosed on its lien on three films licensed to Netflix, and you claim that Relativity attempted to affirmatively conceal this from Netflix.  In fact, Netflix has known of the foreclosure for months, at least since early February.  At that time, Ben Feingold of Samuel Goldwyn Films ("Goldwyn") notified Netflix in an email that Goldwyn was now distributing the films for Macquarie, and told Netflix that Macquarie had acquired the films in foreclosure from Relativity.  Far from hiding the foreclosure, Relativity had informed Macquarie and Goldwyn that Netflix had rights in the films under the License Agreement, and Goldwyn reached out to Netflix as a result.  In the same email, Mr. Feingold also told Netflix that Goldwyn wanted to honor any rights Netflix had in the films, as noted in my May 21 letter to you.

In addition, almost two weeks before your May 21 letter, the foreclosure was described in the May 8 declaration of Relativity's Chief Restructuring Officer, Colin Adams, submitted in the current bankruptcy proceedings (at Docket No. 7 p. 15, reflecting that Macquarie had foreclosed on the films pursuant to a credit bid).  The fact that title had passed to Macquarie was reflected as well in my May 8 declaration (at Docket No. 8 p. 9, explaining that Debtors had

effectuated an orderly transition of the three films to Macquarie).  I also referenced the foreclosure in my letter to you of May 21, which was sent before your letter of the same day accused Relativity of seeking to hide it.  Thus, contrary to your letter, Netflix did not recently learn of the foreclosure despite its alleged concealment by Relativity.  Netflix learned of it months ago from the foreclosing lender after Relativity made it clear to the lender that Netflix had rights in the films at issue, and from Relativity itself.

There also is no basis for your claim that the foreclosure violated the License Agreement.  You do not, and cannot, contend that the License Agreement in any way prohibits Relativity from granting liens to its lenders on rights in the films licensed to Netflix.  Netflix is well aware that such liens exist.  It is standard in the industry for lenders to obtain them, whether in connection with film production, post theatrical release or otherwise.  Indeed, Netflix was fully aware of the Macquarie loan, which was for post-release financing, if for no other reason than that the loan and Macquarie's secured lender status was referenced over two years ago in Relativity's Plan of Reorganization.  Netflix was also aware of other loans that provided lenders with liens on rights in the films in question, and other assets, including the RM Bidder loan (now held by UltraV Holdings, LLC), which was in place when Relativity emerged from bankruptcy in 2016.  Netflix never objected to any of those loans, even though there was a risk of foreclosure on Relativity's rights in the films licensed to Netflix because Relativity could default on those loans.

That Netflix never objected to these liens is no surprise:  it has no right to object to foreclosure of Relativity's rights in the licensed films.  It is only entitled to continuation of its licensing rights, which were protected in this case.  Section 11(b) of the Class D Replacement Security Agreement of April 12, 2016, pursuant to which Macquarie held its liens on the films, expressly prohibits Macquarie from adversely affecting the rights of Relativity's licensees:

> The Agent and each Lender acknowledges and agrees that the Agent and such Lender will not alter, interfere with or adversely affect the rights of distributors, subdistributors or licensees to distribute, exhibit and/or to exploit the Pictures licensed to it under distribution or license agreements…and that even if the Lenders shall become the owner of the Collateral in case of an Event of Default, the Agent and Lenders will not alter, interfere with or adversely affect rights of such distributor, subdistributor or licensee under such agreement.

Thus, while Macquarie controls the distribution of these films, which would be the case after any foreclosure, Macquarie was bound not to disturb Netflix's licensing rights.  After the foreclosure, Macquarie did not even change distributors from Relativity to Goldwyn until early 2018.  Thereafter, Goldwyn expressly told Netflix it wanted to honor Netflix's rights but, after not hearing back from Netflix as to whether Netflix wanted to avail itself of them, Goldwyn concluded it could post the films on Amazon Prime.  Promptly after Netflix notified Relativity

2

that the films had been posted, I told Goldwyn that they should be taken down, and they were taken down within hours.[1]

Contrary to your letter, there has been no violation of the representations and warranties that you invoke (or any other ones) in the License Agreement:

- Section 7.2.1 states Relativity had the right, power, legal capacity and authority to enter into and perform under the License Agreement and to grant Netflix the licensed rights. It did. Unlike other representations and warranties, Section 7.2.1 does not add "and [Relativity] shall maintain" the referenced capacity. It thus only applies as of the date of the agreement, which preceded the Macquarie loan. Even if Section 7.2.1 were a continuing representation, it would be satisfied by Netflix's understanding with Macquarie, which enables Relativity to ensure Netflix's rights and fully perform under the License Agreement.

- Section 7.2.6 states that Relativity has and shall maintain the rights, titles, authorizations, consents and interests necessary to grant Netflix the licenses. Again, Relativity's understandings with Macquarie enable Relativity to continue to meet this commitment.

- Section 7.2.7 provides that Relativity has satisfied and shall satisfy all third-party obligations with respect to Content, its production and exhibition, and transmission by Netflix, including royalties. Netflix does not even attempt to claim that any third-party obligations have not been, or will not be, satisfied.

There is no dispute that Netflix continues to have the rights it obtained under the License Agreement. Although it has complained about violations of exclusivity for the films Macquarie obtained, any violations were discontinued forthwith upon notification by Netflix to Relativity. They do not constitute or establish a violation of Relativity's representations and warranties.

Interestingly in this regard, you do not reference the representation and warranty in Section 7.2.3 of the License Agreement, which deals more squarely with the issue at hand. Pursuant to the well-established principle of contract construction that the specific governs the general, it is therefore noteworthy. It states that Relativity shall maintain sole and exclusive authority to license, exhibit, distribute or otherwise exploit each Title for Pay TV and an SVOD basis during Netflix's exclusivity periods *or*, if Relativity does not have the authority to do so, it shall not license or authorize any third party to do so. That makes clear Relativity need not

---

[1] Your letter criticizes Relativity for having told Netflix that the exclusivity violations were the result of inadvertence. Section 4.3 of the License Agreement does not require a third party's actions to be inadvertent in order for Netflix to be precluded from terminating the agreement as a result of those actions, provided Relativity acts promptly to end the violations. Relativity did so. But the third-party actions – by Macquarie in this case – clearly were inadvertent given Goldwyn's expressed wish to honor Netflix's rights and the films having been taken down forthwith. You also claim Relativity failed to disclose it lacked any right in the films and the legal ability to have the titles removed. In fact, Relativity did have the right to have the titles removed, and they were removed.

have the authority itself, as Netflix suggests, but rather simply must not provide it to a third party.  Relativity did not provide any such authority to Macquarie.  On the contrary, it provided that Macquarie may *not* act contrary to Netflix's rights.

Given that there is no basis to claim the foreclosure violated the License Agreement, there is no basis to claim Relativity hid the foreclosure (which, in any event, it plainly did not do as a matter of fact) to avoid Netflix terminating the agreement.  Noteworthy too in this respect is the proviso in Section 7.2.3 of the License Agreement, which says although Relativity need not maintain licensing authority, it must act promptly pursuant to Section 4.3 to seek to cause any violation of Netflix's exclusivity rights by a third party to cease.[2]  As noted above and in my prior letter, that is precisely what Relativity did in the case of Macquarie.  Under Section 4.3, Netflix accordingly cannot use the exclusivity violation resulting from Macquarie's having briefly posted the three films on Amazon Prime as a basis for terminating the License Agreement.  Despite all of this, in order to support your claim that Relativity engaged in a "campaign of deception" to avoid termination, you make the extraordinary assertion that "Relativity's counsel admitted in open court on May 9 [that] Relativity was seeking to avoid letting Netflix know that Netflix had grounds to terminate the License Agreement for material breach."  As the transcript of the May 9 hearing reflects, Relativity's counsel in fact said no such thing.

Your letter also claims that Relativity sought to conceal the foreclosure to avoid a massive damages claim by Netflix.  Of course, the fact that the foreclosure did not breach the License Agreement means there are no damages.  Even if the foreclosure somehow did breach the agreement, which it did not, Netflix suffered no harm from the relatively brief exclusivity violation – as Relativity has pointed out in its prior correspondence.  To get around this, your letter makes the manifestly baseless claim that Section 4.6 of the License Agreement should be the basis for calculating damages.  That section gives *Relativity*, not Netflix, the right to have a licensed film withdrawn if *Relativity* believes its continued use by Relativity or Netflix could subject either of them to liability.  The section confers a right – not an obligation – on Relativity, which it is free not to exercise for any reason (such that it doesn't believe Netflix's continued use of the films will result in any liability).  If Relativity does not exercise the right, there is no termination of the license for the titles in question pursuant to this provision.  Accordingly, there is no requirement thereunder for Relativity to refund any portion of the license fee paid by Netflix.  As we pointed out in the case of Netflix's prior efforts to invoke this section, it makes no sense given that Netflix's License Agreement rights are continuing.

On the strength of a demonstrably non-existent conspiracy to conceal, false attributions to counsel, invocation of patently inapplicable contractual provisions, and a series of factual errors, your letter concludes with a broad demand for any communications with any lender relating to foreclosure.  That is absurd on its face.  You also ask that Relativity preserve evidence relating to various topics Netflix has raised, which we are obliged to do in any event.

---

[2] Although the License Agreement actually references Section 4.2, that is clearly an error.  The provision described is in Section 4.3, and so that was clearly the section intended to have been referenced.

So that there is no doubt, Netflix too should be preserving documents, including but not limited to all evidence relating to its supposed claims, the facts noted by Relativity in response to them, Netflix's knowledge of liens held by Relativity's lenders, Netflix's desire to renegotiate the License Agreement and its assessment of actual or prospective costs and benefits thereunder, Netflix's withholding of license fees due under the License Agreement, and any plans or strategies by Netflix to impair Relativity's ability to provide films to Netflix for license.

As the prospect of Relativity reorganizing has become greater, so has the shrillness of Netflix's claims.  It is increasingly clear that what Netflix fears most is not Relativity's future inability to perform, but its ability to do so.   We reiterate our demand for payment of the overdue license fee payment of $1,000,313.10 with respect to the film *A Question of Faith*, the $622,049.36 license fee payment due yesterday for *The Stray*, and payments due hereafter for other films.  Relativity reserves any and all rights and remedies it has against Netflix with respect to the matters discussed herein and the License Agreement.

Very truly yours,

Lori Sinanyan

5